928

## GILROY v. PRUDENTIAL INS. CO. OF AMERICA.

### Civ. No. 1102-M.

District Court, S. D. Florida,
Miami Division.

Oct. 25, 1945.

Abe Aronovitz, of Miami, Fla., for plaintiff.

Shutts, Bowen, Simmons, Prevatt & Julian, and L. S. Julian, all of Miami, Fla., for defendant.

DE VANE, District Judge.

This suit is brought by Dorothea B. Gilroy against the Prudential Insurance Company of America, a corporation, to recover on two policies of life insurance issued by the defendant on the life of her husband, Murray G. Gilroy, now deceased. The deceased carried six policies of insurance with the defendant, all of which were paid on his death save the two involved in this suit. Defendant, claiming these two policies had lapsed on date of death, declined to pay the same. Plaintiff, claiming the policies were in full force and effect on date of death of insured, brought suit to recover on said two policies.

The controversy centers around whether premiums were paid .in July, 1942, and whether premiums paid on September 1, 1942, were legally refunded. If the July premiums were paid or if the premiums paid in September were not legally refunded the policies were in full force and effect on date of death of the insured, and plaintiff is entitled to recover. If defendant is right on its contention as to both issues. then both policies had lapsed on date of death of insured and defendant is not liable on the policies.

At the trial plaintiff produced and filed in evidence a "temporary receipt" dated July 8, 1942 (Plaintiff's Exhibit No. 2) showing payment of premiums on that date on the two policies in question. The temporary receipt was signed by J. R. Evans, an agent of the defendant, who usually collected the monthly premiums due on the two policies. Plaintiff testified that she found the receipt only a few days before the trial of the case began and neither the defendant nor its counsel had any knowledge of the existence of this temporary receipt until shortly before the trial. Evans appeared as a witness for the defendant and denied that he had received the premiums indicated by the receipt, although he acknowledged his signature on the temporary receipt. If the premiums indicated by the receipt of July 8, 1942 were paid to Agent Evans, by the insured, Evans never turned them in to the company.

Since the trial closed, counsel for defendant has submitted photographic copies of the receipt to a handwriting expert, who, in affidavit form, swears that the receipt is not in the handwriting of Evans and based upon this affidavit, counsel for defendant has filed in this case a Motion for New Trial on the ground of this newly discovered evidence, which was not available to the defendant at the time of trial.

If the case rested entirely upon the validity of this receipt the Court would grant the Motion for New Trial and explore fully

the question of the validity of the July 8, 1942 receipt, held by plaintiff. However, if the second payment made upon the two policies in question was a valid and binding payment, as between the insured and the Insurance Company, the policies were in full force and effect on the date of the death of insured and plaintiff is entitled to recover. It is, therefore, appropriate that the Court explore the second issue before granting a new trial to determine the validity of the purported temporary receipt dated July 8, 1942.

The circumstances surrounding the second payment are these: When agent Evans called on the insured in July, 1942, to collect the monthly premiums due on these policies in June, the insured advised Evans that he was not financially able to continue to pay premiums on the two policies. Whereupon Evans advised the insured that the loan value on the two policies was sufficient to carry them for an additional period and offered to secure a loan for that purpose. The insured readily agreed to the proposal. On August 14, 1942, a date subsequent to the expiration of the grace period in which the July premiums could have been paid, Evans presented the insured with a blank form application for a loan on the two policies. The form was also an application for re-instatement of the the two policies. The insured signed the blank form application before it had been filled out and as he is now dead and cannot speak the record is silent on whether he knew it was merely an application for a loan or an application to re-instate the policies and for a loan.

On September 1, 1942, the insured paid to another agent of the Insurance Company, Breitbart by name (Plaintiff's Exhibit No. 8), $108.60 on account of premiums on the two insurance policies. The record shows that Breitbart had not theretofore collected premiums from the insured on any of the policies carried by him with the defendant, but on that date he was in the business place of the insured collecting premiums on policies carried by some of insured's employees with the defendant insurance company. The insured recognized Breitbart and told him that as he was going on a vacation and as he would likely be gone when the regular agent (Evans) came around to collect the premiums, he would like to pay his premiums to Breitbart. Breitbart immediately called the office of the Insurance Company, from insured's place of business, ascertained $108.60 was due, collected this amount and turned it in to the Insurance Company.

When Breitbart turned this money in to the company, the policies had been re-instated, the loans on the policies had been approved and the amount of the loans applied to the payment of premiums then due and to fall due for the next several months. The resident agent of the company decided that under these circumstances the premiums of $108.60, collected by Breitbart, should be returned. The testimony of the employee of the Insurance Company who made out the check and handled the return, is to the effect, that she asked Breitbart in whose favor the check should be drawn and he advised her that it should be drawn to the order of the plaintiff, as plaintiff and not the insured had paid him the premiums. Breitbart denied this on the stand. He testified that the insured paid the premiums and that he gave no instructions as to how the check should be drawn.

The check was, in due course, drawn in favor of the plaintiff and mailed to her, but plaintiff was not in Miami at the time and the check was forwarded to her at some point in the North where she was visiting her parents. Plaintiff testified that she was carrying insurance with the defendant, also, and that while she had never received dividends on her insurance before, she assumed that the check represented dividend payments on insurance she carried with the defendant and was intended for her. She was in no hurry to cash the check and did not cash it until after her return to Miami in October. The check shows on its face the policy number of one of the policies involved in this suit. No letter of explanation accompanied the check and the check does not show on its face that it was a refund of premiums paid on September 1, 1942.

The question thus presented is whether the payment of this amount of money to the plaintiff constituted a refund of premiums paid by the decedent during his lifetime.

Some one is obliged to suffer as a result of the comedy of errors made in the handling of this payment, and the Court is of the opinion that the equities are with the plaintiff and against the defendant.

■ There is no dispute that the premium payments of September 1, 1942 were made, were accepted by the company and deposited to its account. No provisions of the insurance policies required their refund or their acceptance by insured, but, of course, the defendant could offer to return them, if it desired to do so. Defendant contends that the premiums were paid by the plaintiff and therefore defendant had the right to return them to plaintiff. The Court holds against the defendant on this contention. The Court is of the opinion that it makes no difference who paid the premiums. As the defendant accepted the premium payment, a duty rested upon defendant to apply them as insured intended they should be applied, or if defendant desired to return them, to refund them to the insured or secure his consent to refund them to his wife. The record contains no such proof and there is no evidence that the insured ever had any knowledge that the premiums had ever been returned by the defendant to his wife. Plaintiff testified she never told insured about the check received and defendant does not claim it notified him.

■ Counsel for defendant contends that plaintiff, as beneficiary under the two policies, should not be permitted to profit by her own misdeeds. If the action of plaintiff in accepting and cashing the check constituted the perpetration of a fraud upon the defendant there would be merit to this contention. However, the record does not support a charge of misconduct on the part of plaintiff for the reason that it is completely void of proof that plaintiff was aware that the check received by her and payable to her order constituted a refund of the premium payments made by the insured on September 1, 1942. The evidence shows that plaintiff cashed the check at the office of defendant upon her return to Miami, Florida, in October, 1942, but shows nothing said to her as to the nature or purpose of the check.

■ Counsel for defendant also attaches great importance to the fact that when the next premiums fell due in March, 1943, the insured failed to pay any further premiums on the two policies and realized that they had lapsed and would continue in effect only as long as the paid-up insurance would carry them. The Court is of the opinion that this has nothing to do with the issues in the case. The sole question before the Court is whether or not these payments, together with the extended insurance, were sufficient to keep the policies in full force and effect until the death of the insured. The parties agree that they were sufficient to carry the insurance beyond the date of death of the insured.

Upon all the facts in this case the Court holds that the two policies were in full force and effect upon the date of death of the insured, and plaintiff is entitled to recover thereon.

Counsel for plaintiff will prepare Findings of Fact and Conclusions of Law in conformity with this Memorandum Opinion and submit copies thereof to counsel for defendant, who may file objections thereto with the Court and may submit additional Findings of Fact and Conclusions of Law.